# In the United States Court of Federal Claims

|                                   |                          |
|-----------------------------------|--------------------------|
| MESSIAH ALI-BEY,                  |                          |
|           Plaintiff,              | No. 23-cv-1044           |
|           v.                      | Filed: February 23, 2024 |
| THE UNITED STATES,                |                          |
|           Defendant.              |                          |

*Messiah Ali-Bey*, Tampa, Florida, Plaintiff, appearing *pro se*.

*Augustus Jeffrey Golden*, United States Department of Justice, Civil Division, Washington, D.C., appearing for Defendant.

**MEMORANDUM AND ORDER**

On July 6, 2023, Plaintiff Messiah Ali-Bey, proceeding *pro se*, filed suit in this Court on behalf of "the Moorish Son's [sic] and Daughters of Light International institute, Clock of Destiny, Order of the Great Seal Order" against "Joseph Robinette Biden Jr" and "the Estate of Abraham Lincoln" to remedy the past enslavement of Moorish Americans. *See* Complaint (ECF No. 1) (Compl.) at 1–3.[1] Plaintiff asserts the United States owes Moorish Americans "more than $1,284,876,372,763,481.90" to correct a myriad of claims including purported constitutional violations, international treaty violations, negligence, and interference with intellectual property

---

[1] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

rights.[2]  *Id*. at 6–9.  Defendant moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1), contending that Plaintiff's claims fall outside this Court's limited jurisdiction.  *See generally* Defendant's Motion to Dismiss (ECF No. 8) (Def. Mot.); *see also* Defendant's Reply in Support of Defendant's Motion to Dismiss (ECF No. 11) (Def. Reply).  For the reasons discussed below, this Court **GRANTS** Defendant's Motion.

## BACKGROUND

As noted, on July 6, 2023, Plaintiff filed a Complaint in this Court on behalf of Moorish Americans to remedy alleged wrongdoings related to his ancestors' enslavement.  Compl. at 3.  Plaintiff raises various claims including alleged constitutional violations, international treaty violations, negligence, and interference with intellectual property rights.  *Id.* at 3–5.  To support these claims, Plaintiff alleges that the Moorish people had their "birthright and nationality" stolen as a result of their enslavement in America from 1619–1865, loss of nationality from 1779–1865, and alleged ongoing injustices in the present.  *Id*. at 6–8.  According to Plaintiff, this enslavement "was established through a scientific methodology" and perpetuated through trade secrets to dehumanize, degrade, and subjugate the Moorish people.  Plaintiff's Response to Motion to Dismiss (ECF No. 10) (Pl. Resp.) at 4; Compl. at 4.  In addition to subjugating Moorish Americans, Plaintiff contends that the United States "reduced [the] genetic situation" and "trademarked" Moorish Americans using racial slurs "as a method of commerce."  Compl. at 4.  Plaintiff asserts that this practice continues today as the United States "allow[s] the State Citizens to injure the

---

[2] Stating this amount of damages is "nearly unrealistic for one generation of Moorish-American[s] who were made Slaves to receive at one time" and would cause "extreme strain," Plaintiff requests "a mutual restitution settlement (conference) agreement" with the United States to provide Moorish Americans with government resources, including "finance, tax credits, insurance, state owned properties" in place of monetary damages.  Compl. at 11.  Plaintiff, however, is inconsistent in how he characterizes his requested relief throughout the Complaint, and as such, Plaintiff's request is construed liberally for purposes of this Memorandum and Order.

Moors economically, socially, and politically with violence[,] fear and economic deprivation." *Id*. at 3.

Plaintiff alleges that these actions violate the Fifth Amendment, Thirteenth Amendment, international treaties, and federal statutes. *Id*. at 3–5. Specifically, Plaintiff contends that the Moorish people were "bound and tak[en] as human chattel without just compensation" by the United States. *Id*. at 3. Plaintiff asserts that this treatment as "human chattel" violates the Fifth Amendment, the Treaty of Peace and Friendship, and Military Order No. 100 Art. 43. *Id*. Further, Plaintiff reiterates throughout the Complaint that the United States interfered with the Moorish people's intellectual property by "(1) manufactur[ing] slaves through forced human experimentation … (2) reduc[ing] their genetic situation … (3) reduc[ing] their legal status to real property and (4) trademark[ing] and market[ing] them" in commerce using racial slurs. *Id*. at 7. Plaintiff claims that these actions resulted in the Moorish people having their birthright and nationality stolen in violation of the Treaty of Peace and Friendship. *Id*. at 8, 10.

Next, Plaintiff asserts that the United States and former President Abraham Lincoln deprived the Moorish people of their intellectual property "by failing to suspend intellectual property rights from white Americans' [sic] in the 13th Amendment." *Id*. at 8. According to Plaintiff, this was an act of "gross federal negligence and national deception." *Id*. Plaintiff maintains that these actions continue today such that the United States "continues to benefit[] astronomically from unjust enrichment delivered from the ownership of said intellectual properties…" *Id*. at 8–9. The Complaint states that this "unjust enrichment" is in violation of "federal treaties governing human rights, rights of indigenous peoples and the use of science and technology." *Id*.

As a result of these purported violations, Plaintiffs contends the United States owes at least $1,284,876,372,763,481.90 in damages to Moorish Americans. *Id*. at 6. Plaintiff also requests the Court take various actions including abolishing slavery, "reverse engineer[ing] the methods used" against the Moors, reinstating an international treaty between the United States and the Moors, developing a restitution agreement, and correcting Congressional actions. *Id*. at 10–11.

On September 1, 2023, Defendant filed a motion to dismiss pursuant to Rule 12(b)(1). Def. Mot. at 1. Defendant argues this Court lacks subject matter jurisdiction to hear Plaintiff's claims for three reasons. *Id.* at 4–7. First, Defendant argues that this Court's jurisdiction extends only to claims against the United States, not government officials. *Id.* at 4. Next, Defendant asserts Plaintiff failed to point to a substantive right to claim monetary damages. *Id.* at 4–7. Finally, Defendant contends that Plaintiff's requests for equitable relief are outside the Court's jurisdiction. *Id.* at 7. On October 5, 2023, Plaintiff filed a Response to the Motion to Dismiss, clarifying that his claims were directed against the United States and based on a substantive right to monetary damages created by the Treaty for Peace and Friendship. Pl. Resp. at 10–11. Defendant subsequently filed a reply on October 19, 2023. Def. Reply at 1. As Defendant notes, Plaintiff defends his position by largely relying on the Treaty of Peace and Friendship. *Id.* at 3.

### **APPLICABLE LEGAL STANDARD**

As the primary source of jurisdiction for the United States Court of Federal Claims, the Tucker Act vests this Court with jurisdiction over any suit against the United States for money damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act serves as a waiver of sovereign immunity for "certain claims for monetary relief against the United States," but it does not create

any enforceable right against the United States on its own.  *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).  To establish a right under the Tucker Act that falls within this Court's limited jurisdiction, a plaintiff must identify a "money-mandating" source under federal law.  *Bell v. United States*, 20 F.4th 768, 770 (Fed. Cir. 2021).  More precisely, a plaintiff "must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government.'"  *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)).  Accordingly, this Court's limited subject matter jurisdiction does not extend to "every claim invoking the Constitution, a federal statute, or a regulation."  *Id.* at 216.

Moreover, this Court lacks jurisdiction over claims against private parties or government employees in their individual capacities.  *United States v. Sherwood*, 312 U.S. 584, 588 (1941) (affirming that the United States Court of Federal Claims' limited jurisdiction does not include relief "against others than the United States"); *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials.").  Thus, while the Court has jurisdiction over monetary claims against the United States, it lacks jurisdiction over claims against specific federal employees acting in their individual capacity.

This Court is required to dismiss claims outside its limited subject matter jurisdiction.  *See* Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, this Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Express Lines*, 739 F.3d at 692; *see also Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014).

In considering a motion to dismiss, this Court must liberally construe a complaint filed by a *pro se* litigant because *pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  That said, *pro se* plaintiffs must still prove this Court's jurisdiction by a preponderance of the evidence.  *See Curry v. United States*, 787 F. App'x 720, 722 (Fed. Cir. 2019); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  While this Court allows ambiguities in *pro se* filings, it "does not excuse . . . failures" on the merits.  *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

## DISCUSSION

### I. This Court Lacks Subject Matter Jurisdiction over Plaintiff's Monetary Claims

This Court lacks subject matter jurisdiction over Plaintiff's claims even affording Plaintiff the most liberal construction.  By way of background, Plaintiff named in his Complaint President Joseph R. Biden and the estate of former President Abraham Lincoln as defendants, rather than the United States.  Compl. at 1.  It is well-established, however, that this Court lacks jurisdiction over suits brought against government officials.  *See, e.g.*, *Sherwood*, 312 U.S. at 588 (finding that suits against parties "other than the United States" are outside this Court's jurisdiction).  Plaintiff's Response acknowledges this, and states that his suit is against the United States.  Pl. Resp. at 10 (asserting that the "complaint must not be dismissed as it is against the United States and not President Biden"); *see also id.* at 1.  Even assuming that Plaintiff's claims are against the United States, as he contends in his Response, the allegations in his Complaint nevertheless fail to establish subject matter jurisdiction in this Court.

Plaintiff relies on a variety of sources as the basis for his claims, including constitutional amendments, federal statutes, and international instruments.  He asserts that these provisions

6

provide this Court with jurisdiction to adjudicate his claims. Compl. at 4–5. However, these sources cannot form the basis of subject matter jurisdiction because they are not independent money-mandating sources of law. *Mitchell*, 463 U.S. at 216 ("Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act."); *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc) ("[T]he absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act."); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) ("[R]ights under the Due Process Clauses of the Fifth and Fourteenth Amendments, the Equal Protection Clause of the Fourteenth Amendment … [are not] a sufficient basis for jurisdiction because they do not mandate payment of money by the government."); *Donnelly v. United States*, No. 2023-1651, 2023 WL 6889032, at *3 n.3 (Fed. Cir. Oct. 19 2023) (finding that Plaintiff failed to establish jurisdiction because he did not demonstrate "how [a treaty] is a money-mandating source"); *Elkins v. United States*, 229 Ct. Cl. 607, 608 (1981) ("[E]xcept for the taking clause of the fifth amendment, the other amendments do not require the United States to pay money for their alleged violation.").

First, Plaintiff points to the Fifth and Thirteenth Amendments to establish jurisdiction in support of his claims. Compl. at 3–4. Neither establishes subject matter jurisdiction in this Court. The Thirteenth Amendment is not a money-mandating authority that provides jurisdiction. *Humphrey v. United States*, 60 F. App'x 292, 295 (Fed. Cir. 2003) ("The Court of Federal Claims correctly concluded that it had no jurisdiction over [Plaintiff's] claims under the 5th, 8th, 13th, and 14th Amendments to the Constitution, because those Amendments do not mandate money damages under the circumstances presented here."); *Starnes v. United States*, 162 Fed. Cl. 468, 474 (2022) (finding the Court lacks subject matter jurisdiction because the Thirteenth Amendment is not money-mandating). Plaintiff's Fifth Amendment claims fail for the same reason. Plaintiff

asserts that his ancestors experienced "atrocities … as human chattel property in violation of the 5th Amendment." Compl. at 3. While the Takings Clause of the Fifth Amendment confers jurisdiction on this Court, Plaintiff appears to instead claim a violation of the Due Process Clause of the Fifth Amendment. *See Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) ("It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction."); *Pellegrini v. United States*, 132 Fed. Cl. 64, 70 (2017) (citing *LeBlanc*, 50 F.3d at 1028) (holding that while the Court has jurisdiction over Takings Clause claims under the Fifth Amendment, the same is not true for Due Process Clause claims); *Stevens v. United States*, No. 09-338C, 2009 WL 3650874, at *4 (Fed. Cl. Oct. 28, 2009) ("Although the court has jurisdiction over taking claims, a claim relating to wrongful governmental control over a person is not a Fifth Amendment taking claim, but is instead a request for … due process"). The Due Process Clause of the Fifth Amendment is not a money-mandating source. *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act."). Therefore, these provisions cannot provide a cause of action that confers jurisdiction on this Court.

To the extent Plaintiff is alleging that the United States took property in violation of the Fifth Amendment, the true nature of Plaintiff's claims sound in tort. *See Chemsol, LLC v. United States*, 755 F.3d 1345, 1354 (Fed. Cir. 2014) (quoting *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008)) ("[T]he 'mere recitation of a basis for jurisdiction [is] not … controlling' and courts 'must look to the true nature of the action in a district court in determining jurisdiction.'"). Plaintiff claims that the United States and its actors "leveraged the intellectual property rights of the Moors" and "stole the[ir] Birthrights" through "forced human

8

experimentation." Compl. at 7–8. This Court has recognized that these types of claims sound in tort rather than forming the basis of a Fifth Amendment Takings claim. *See Kaetz v. United States*, 159 Fed. Cl. 378, 382 (2022) (holding that a plaintiff was asserting a tort claim when arguing "that his physical existence, rights, and liberty [were] being taken"); *Perry v. United States*, No. 14-587C, 2014 WL 7366083, at *3 (Fed. Cl. Dec. 23, 2014) (holding that allegations of "human experimentation" is a claim sounding in tort). Tort claims are beyond the jurisdiction of this Court. 28 U.S.C. § 1491(a)(1); *Sellers v. United States*, 110 Fed. Cl. 62, 66 (2013). As a result, Plaintiff's tort claims of "gross negligence" and "national deception," must also fail. *Elkins*, 229 Ct. Cl. at 608 (finding no jurisdiction for "claims based upon negligence [and] deception", which both sound in tort).

Next, the bulk of Plaintiff's argument rests on purported violations of the Treaty of Peace and Friendship. Compl. at 3 ("This action is arising out of a treaty with the United States"); *id.* at 4; Pl. Resp. at 14 ("Plaintiff['s] rights are established in the provision of the treaty"); *see also* Def. Reply at 3–5. Plaintiff contends the United States engaged in human trafficking, "taking [the Moorish people] as human chattel without just compensation in violation" of the Treaty of Peace and Friendship. Compl. at 3. It is well-established that this Court lacks jurisdiction to consider claims arising from treaties with foreign nations. 28 U.S.C. § 1502; *Newimar S.A. v. United States*, 160 Fed. Cl. 97, 127 (2022), *aff'd*, 2023 WL 8534614 (Fed. Cir. Dec. 11, 2023) (quoting *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 903 (Ct. Cl. 1976)) ("The inquiry 'is whether plaintiff's claim could conceivably exist independently of, or separate and apart from, the subject treaty, or whether, on the contrary, it derives its existence so exclusively and substantially from certain express terms or provisions thereof, that consideration of the claim would necessitate our construction of the treaty itself.'"); *Hills v. United States*, 162 Fed. Cl. 750, 753 (2022) (quoting

28 U.S.C. § 1502) (holding that 28 U.S.C. § 1502 does not grant this Court jurisdiction over claims based on treaties with foreign nations unless "otherwise provided by Act of Congress"). Plaintiff asserts that jurisdiction is appropriate here under *Richard v. United States*. Pl. Resp. at 14–15. In *Richard*, the Court of Appeals for the Federal Circuit held this Court was not barred from considering a claim based on the Fort Laramie Treaty of 1868 with the Sioux Indians. *Richard v. United States*, 677 F.3d 1141, 1142, 1153 (Fed. Cir. 2012). However, treaties with Indian tribes and treaties with foreign nations are distinguishable for purposes of jurisdiction. *Edwards v. United States*, Nos. 15-580C, 15-629C, 2015 WL 6560547, at *3 (Fed. Cl. Oct. 29, 2015) (holding that this Court may have jurisdiction over treaties with Indian Tribes as compared to foreign nations because Indian "treaties are considered contracts with the United States."). This Court does not recognize the Treaty of Peace and Friendship as a basis for jurisdiction because it is not a treaty with an Indian Tribe. *Republic of New Morocco v. United States*, 98 Fed. Cl. 463, 468 (2011) (internal citations omitted) (quoting 28 U.S.C. § 1502) ("No provision of [the Treaty of Peace and Friendship Between the United States of America, and His Imperial Majesty the Emperor of Morocco, July 6, 1786–Jan. 25, 1787] … mandates the payment of money damages. Moreover, unless otherwise specifically authorized by statute, the Court of Federal Claims lacks jurisdiction over 'any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations.' Consequently, the [Treaty] cannot serve as a basis for the Court to exercise jurisdiction over the complaint.").

For the same reasons, this Court lacks jurisdiction to consider allegations based on other international declarations and resolutions to which Plaintiff cites. Plaintiff contends jurisdiction exists as he relies on various international declarations and resolutions, including United Nations Commission on Human Rights Resolution 1986/9 on the Use of Scientific and Technological

10

Developments for the Promotion and Protection of Human Rights and Fundamental Freedom, the United Nations Declaration on the Use of Scientific and Technological Progress in the Interests of Peace and for the Benefit of Mankind, the Universal Declaration of Human Rights, and the United Nations Declaration on the Rights of Indigenous Peoples. Compl. at 4–5. The Court lacks jurisdiction over claims based on such sources. *See* 28 U.S.C. § 1502; *Hills*, 162 Fed. Cl. at 753; *El v. United States*, 122 Fed. Cl. 707, 710 (2015) (holding that the Court of Federal Claims lacks jurisdiction to hear claims based on the Universal Declaration of Human Rights and the Declaration of the Rights of Indigenous Peoples). Such international declarations and resolutions are not agreements between the United States and Indian Tribes.

Further, the Universal Declaration of Human Rights "does not of its own force impose obligations as a matter of international law." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734–35 (2004). Other United Nations instruments have similarly failed to establish a right of action in federal court because they are not self-executing. *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1175 (Fed. Cir. 2009); *see Sosa*, 542 U.S. at 735 ("[T]he United States ratified the Covenant on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts."). Therefore, this Court does not have jurisdiction over violations of United Nations instruments. *See e.g.*, *Hansen v. United States*, No. 24-91, 2024 WL 303725, at *1 (Fed. Cl. Jan. 26, 2024) ("However, the Court lacks jurisdiction to hear any claims relating to the United Nations or the [Universal Declaration of Human Rights]."); *Lord Noble Kato Bakari El v. United States*, 127 Fed. Cl. 700, 705 (2016) (refusing to "entertain claims based upon United Nations declarations" including the "Declaration of the Rights of Indigenous People"); *Gimbernat v. United States*, 84 Fed. Cl. 350, 354–55 (2008). Because the UN instruments Plaintiff cites are not self-executing documents, Plaintiff cannot assert that this Court has jurisdiction.

Plaintiff's claims of intellectual property violations also fail to establish jurisdiction here. Relying on 28 U.S.C. § 1498, Plaintiff contends that "citizens of the United States and State actors used the scientific method to enslave the Moors and steal[] [their] intellectual property rights."  Pl. Resp. at 2, 8.  Specifically, Plaintiff asserts that the United States used trade secrets "to manipulate the natural genetic situation of the Moors" and "trademarked and marketed them … as a method of commerce."  Compl. at 7, 9.  While Plaintiff broadly references "intellectual property," his claims focus on trade secret and trademark claims.  *Id.* at 4, 7–9.  However, 28 U.S.C. § 1498 only provides the Court with jurisdiction over claims based on patents, copyrights, and protected plant varieties.  28 U.S.C. § 1498.  Therefore, these claims related to trade secrets and trademarks fall outside the scope of 28 U.S.C. § 1498.  Indeed, even if Plaintiff's intellectual property claims could be construed broadly enough to confer jurisdiction under 28 U.S.C. § 1498, Plaintiff has not shown proof of a valid patent or copyright.  Plaintiff refers generally to "Title 17 Copyright Law of Great Seal Zodiac" but does not provide "actual copyright registration, or the denial of copyright registration" as required by this Court.  *See* Compl. at 5; *see also Dell v. United States*, No. 20-500C, 2020 WL 4876247, at *2 (Fed. Cl. Aug. 20, 2020) (quoting *Jennette v. United States*, 77 Fed. Cl. 126, 131 (2007)) ("However, 'actual copyright registration, or the denial of copyright registration, is required prior to bringing suit for copyright infringement.'").  Consequently, Plaintiff fails to establish jurisdiction under 28 U.S.C. § 1498.

Finally, the remainder of Plaintiff's Complaint rests on claims that do not confer jurisdiction upon this Court.  Plaintiff's allegation of unjust enrichment is not a valid basis for jurisdiction.  *8x8, Inc. v. United States*, 854 F.3d 1376, 1383 n.7 (Fed. Cir. 2017) ("[T]he Court of Federal Claims does not have jurisdiction over such unjust enrichment claims."); *Beavis v. United States*, No. 09-33307, 2023 WL 4683543, at *6 (Fed. Cl. July 20, 2023) ("[T]his Court lacks

jurisdiction over claims of unjust enrichment."). Further, Plaintiff cannot rely on 18 U.S.C. § 1001 and § 1028 because this Court lacks jurisdiction over criminal causes of action. *Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994) ("The court has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code"); *Dukes v. United States*, No. 23-908, 2023 WL 8785112, at *5 (Fed. Cl. Dec. 19, 2023); *Flander v. United States*, No. 15-1110C, 2015 WL 7769512, at *2 (Fed. Cl. Dec. 2, 2015) ("Nor can alleged identity theft under 18 U.S.C. § 1028 form the basis of [plaintiff's] complaint.").

Nor does Plaintiff identify "a separate source of substantive law that creates the right to money damages." *Blueport Co., LLC v. United States*, 533 F.3d 1374, 1383 (Fed. Cir. 2008) (citing *Jan's Helicopter Serv., Inc.*, 525 F.3d at 1306). For example, Plaintiff references "Military Order No. 100 Art. 43" as a basis for jurisdiction. Compl. at 5. Assuming Plaintiff is referencing General Orders No. 100, otherwise known as the Lieber Code[3], this provision is not a money-mandating statute. *Price v. United States*, 123 Fed. Cl. 560, 561, 563 (2015) (finding no jurisdiction existed for a plaintiff who relied on the Lieber Code in their complaint). Plaintiff's reliance on general "federal statutes" without any specificity also fails to confer jurisdiction under 28 U.S.C. § 1498. *See* Compl. at 5 (citing to "federal statutes" as a basis for jurisdiction); *Mitchell*, 463 U.S. at 216–17 (quoting *Testan*, 424 U.S. at 400) (A plaintiff "must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government.'"); *Bell*, 20 F.4th at 770. As a result, this Court lacks subject matter jurisdiction over Plaintiff's claims.

---

[3] General Orders No. 100 is a Civil War code of conduct for Union soldiers created in 1863 by the War Department. *See Curie v. United States*, 163 Fed. Cl. 791, 802 n.7 (2022).

### II. This Court Lacks Subject Matter Jurisdiction over Plaintiff's Requests for Equitable Relief

Plaintiff asks this Court to compel the United States to take a variety of actions including: (1) abolish slavery, (2) "reverse engineer the methods used to deprive Moors of their nationality and birthrights," (3) reaffirm the Treaty of Peace and Friendship, (4) "develop a mutual restitution settlement (conference) agreement" to distribute resources to the Moorish Americans, such as property and tax credits, and (5) rewrite the United States Senate's 2009 apology for slavery. Compl. at 9–11.  It is well established that this Court's Tucker Act jurisdiction does not extend to claims for equitable relief.  *Brown*, 105 F.3d at 624 (citing *United States v. King*, 395 U.S. 1, 2–3 (1969)) ("The Tucker Act does not provide independent jurisdiction over such claims for equitable relief.").  Therefore, these demands for equitable relief must be similarly dismissed for lack of subject matter jurisdiction.

### CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 8) pursuant to Rules 12(b)(1) and 12(h)(3).  Plaintiff's Complaint is dismissed without leave to replead.  The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

Dated: February 23, 2024
Washington, D.C.

14